## Magee v. Magee, Appellant.

Argued March 12, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and GRAFF, JJ.

*John V. Diggins,* for appellant.

*William C. Alexander,* for appellee.

OPINION BY TREXLER, P. J., February 18, 1930:

This was an action of divorce, the grounds laid being desertion. The parties were married in 1908 and lived happily together until 1925. The libellant's employment called him to South America in 1922 and his wife accompanied him and during their stay there, wrote letters which apparently showed that they were still on the best of terms and enjoying life, notwithstanding some of the discomforts of the tropics. On their return in 1924, she went to the hospital and submitted to an operation and that seems to be the turning point in their married life.

In 1925, she went with her mother to a remote place in the country and during that time they exchanged letters which did not indicate any difficulty between them. When she returned from "the camp," instead of going to their joint domicile, she went to the home of her sister. Libellant made repeated efforts to induce the respondent to return to his home. His endeavors to have her meet him to pave the way for her return were futile. Even when he was brought into court in a non-support proceeding, he informed the court that he was willing to have her return to him. There is every evidence that the efforts made by him to induce his wife to return to him were made in good faith and not with any wrong motive. There was, therefore, abundant proof of desertion on the part of the wife and the only inquiry that remains is whether she was justified in refusing to return to him.

The principal matter relied upon by the respondent is that the libellant circulated reports when she was in camp that her mental condition was such that he

was afraid he would be compelled to send her to a sanitarium. The events preceding this were as follows: the respondent was nervous and mentally depressed; the doctors whom she consulted advised her to see a specialist; the specialist recommended that she be sent to some place where she would be kept under observation. She states that when she went to the camp with her mother, she was forced to do so by her husband who presented the alternative to her either to go to the camp or to an institution. The letters she wrote from the camp do not indicate that her presence there was under compulsion, in fact quite the contrary.

During her absence, her husband was very solicitious as to her health as frequent letters manifest. He spoke to his friends about her condition and stated the possibility of his having to send her to an institution upon her return.

The testimony bears out the conclusion that whatever the husband said to friends about his wife was not with any purpose to pave the way for putting her in an institution, but was rather the expression of anxiety that such a thing might be necessary. He was justified in the position he took, for the testimony of the doctors was to the effect that a resort to the care given by an institution might be the ultimate outcome. The letters that she wrote from the camp are not consonant with any fear on her part that he was going to put her away. She knew that when they went to see the expert that her mental condition was the subject of inquiry and the possibility of her being put under treatment must have been before her at that time. Her refusal to go to him must have been for some undisclosed reason, for the testimony submitted on her behalf does not show any design on his part to put her away, on the contrary that he desired her to resume marital relations.

There is one thing still requires notice. They lived

together for a period of seventeen years in what was stated by the witnesses as an "ideal state." This was only interrupted, according to her testimony on two occasions: one, when he threw a Bible at her and a little work basket, and the other, when six or seven months after her operation, he pulled her down the stairs and caused a hemorrhage. Her testimony in this regard was entirely uncorroborated and was contradicted by him. The same may be said as to accusations of immoral conduct. As remarked by the lower court, "The only evidence in this whole case of anything improper on the part of the libellant is the uncorroborated testimony of the respondent, without script or sign to in any way corroborate her."

We think the action of the lower court in granting the divorce should be sustained and accordingly, the decree is affirmed.